I'm sorry. Who's first to argue on this case? He is. You, Mr. McNamara? Yeah, go ahead. Good morning, Judge Jolly, Judge Dennis, and Judge Elrod. And may it please the Court, I'm Price McNamara, and I have the great honor to represent S. The White against Life Insurance, a company of North America, here today. Lina's counsel of record is extremely capable of research and writing, yet Lina could not present a single citation to this Court that had nearly the lack of evidence that this case has for an intoxication exclusion to be the basis of a denial. It could not cite a single case to this Court wherein a judge, a district court judge, or an appellate judge ever tolerated such an abusive process that we see here. Today, I'd like to address three issues. Lina's procedural violation by failing to disclose its own expert opinion on the core issue of this case, when that expert's opinion was that based upon all of the evidence that the expert reviewed, he could not make a determination of any level of intoxication in Mr. White, the plaintiff's husband. Number two, I'd like to address Lina's procedural unreasonableness in failing to consider or even mention that opinion in either of its denials, original denial and that on appeal. Number three, I'd like to address the fact that the plain lack of adequate evidence to support the denial that we have here today. Any one of the above warrants Lina's decision to be overturned. Here we have three independent bases, all of which support reversing Lina's denial of benefits. If they had not failed to turn over the report, is there evidence or at least an argument that says that you would have, if you had the report, that you would have wanted to, would you have had the ability to cross-examine Dr. Folkman or hire your own expert to refute it or rebut it? That's a great question, Judge Elrod, and the answer is yes. Not that we could have deposed Dr. Folkman, but we could have argued the whole administrative process anticipates that the parties are allowed, after an original denial, to argue the entire administrative record and argue contradiction, argue that Dr. Folkman's very opinion undermined what other evidence Lina purported to hang its hat on in connection with its denial. A word on a police report that says impaired, a government one-page form filled out by the coroner that references drugs, we have their own expert who says the very evidence that those two based their words on saying impairment and drugs in the death certificate were based upon the same toxicology results that Lina's own expert says can't support a finding of any level of impairment. So could we have deposed Dr. Folkman? No. We could have pointed out the fact that his testimony or his opinion underlined, undermined the very basis of what Lina said supported its denial. You could also have submitted your own expert that would have challenged whatever conclusion that Dr. Folkman reached if you wanted to do so. Oh, absolutely. Not only ... Supplementing the record, in other words. Yes, Your Honor. We could not have deposed Dr. Folkman, but obviously we could have decided that based on his report we could have gotten our own expert. We could have supported, produced that into the administrative record, but just as importantly, we could have argued about his report to a completely distinct body, a person in the administrative process, which we have the right to do. And we were denied the right to do whatever we wanted to do, whatever we wanted to argue, whatever next step we wanted to take based upon that report because it was withheld. What is your evidence that it was withheld? Is there more evidence than simply that it was not given to you? Did you apply for it on multiple occasions or one occasion, or what evidence are you attaching to the fault of the administrator not furnishing that expert opinion? Well, whether or not it was intentionally withheld or withheld by mistake ... It doesn't really matter, probably. It doesn't matter, Your Honor, but if you look at the timing of it, his opinion came in the form of a report to Lina a very short period of time, within a couple of days before Lina goes scurrying to the state police saying, Do you have any quantified toxicology? And they answered no. And shortly after that, they issue their denial. When Lina believes they have something that supports their position, they sing it from the rooftops. They don't forget about it. Can I give you absolute direct evidence that they intentionally withheld it? No. Excuse me? Do we need that? No. In fact, this Court in 2015 in Napoli v. Johnson, and I believe Judge Elrod, Your Honor, authored the opinion. The Court said lack of a full and fair review is an independent basis to overturn a denial of benefits, and a plan administrator fails to provide a full and fair review if it fails to comply with the procedures set forth in 29 U.S.C. 1133 and the connected Department of Labor regulations. Nothing could be more clear than the Court's opinion in that regard. What are you asking us to do here? Do you want us to rule in your favor, I mean to reverse and render? Or do you want us to reverse and remand to the administrator? I believe the appropriate remedy is to reverse and render against the insurance company. Why? Because otherwise, Your Honor, for one thing, the opinion I just cited says, and the regulations themselves say, these are the minimum requirements, and a process will not be deemed to give a claim in a full and fair review if they fail to do these things, one of which is to produce all documents relevant to the claim, relevant defined as not necessarily considered by the administrator in forming his opinion, but anything, any document generated in connection with the decision, regardless of whether it's relied upon by the plan administrator. What is the reason that Lana gives in its briefs for failing to provide you this document? None. It says basically that it was no big deal because that opinion, in Lana's view, was favorable to its position, which is ludicrous in and of itself. To think that an expert's opinion saying this toxicology evidence cannot support a determination of intoxication, to say that that's favorable to Lana's position is ridiculous. And number two, to think that Lana believed it to be favorable to its position and somehow forgot about it, the only toxicologist in the record. I mean, they argue it's in their favor because he does confirm that there are all kinds of different drugs or alcohol or whatever may have been in his system, but that he could not come to the conclusion that at the moment of the record that these drugs and alcohol or whatever else may have been in his system impaired him. Isn't that basically what he concluded? I mean, he had all this stuff in him, but we can't, I cannot tell you that it impaired his ability to drive. Well, that's exactly why it's not in Lana's favor, Your Honor. Well, I understand that. Nobody disagrees that they were finding of qualitative only, no time frame provided, no amount provided, no expert testimony having anything to do with how these substances impair driving at any level of ingestion. Even the expert that they relied on did not come to the conclusion that he was impaired at the time, or said as much, that he was impaired at the time of the accident. Absolutely. He did not come to that conclusion. And, in fact, he affirmatively stated that the . . . I'm not talking about Dr. Faulkner. I'm talking about any other experts they did rely on. Are you asking if there's another expert opinion in the record . . . Right. . . . relying on those same toxicology reports? Upon what did they rely to contend that he was impaired at the time of his driving? The only thing Lana relied upon were the toxicology results themselves that Dr. Faulkner said are inadequate. And they relied on a police report word saying impaired that relied upon those same results that its own expert says was inadequate. And it relied . . . Well, they did have a . . . the police report was someone who observed him at the time of the accident and said that he was impaired. Correct? Well, that's not entirely correct. There was . . . on the police report, they wrote the words DWI, or perhaps intoxication. Perhaps? Did they say that? Well . . . What did they say specifically? I believe DWI, which means driving while intoxicated. However, it's without dispute that the reason that was written on the report at the accident scene had only to do with the fact that EMS personnel who were working on the gentleman smelled the smell of alcohol, specifically alcohol. That's why that went into the police report based on EMS observations told to the police, and the police put intoxication because of the smell of alcohol. Well, he tested negative for alcohol. So . . . She said specifically at the accident scene that her husband was under the care of a doctor, he took prescription medications, he had narcolepsy, and that sometimes he took too much medication. Now . . . She also said something about the dog distracted him. Yes, Your Honor, I was going to get to that. So at the scene, that's what she said, later when she first saw the death certificate, she approached Lina by telephone. This is maybe six weeks later. I might not have that time frame exact, but she approached Lina on the telephone. Lina asked her, will you provide us with the death certificate? She says, sure. She goes and gets it. She reads on there what it says. She provides it to Lina, and she calls Lina and says, I see on the death certificate things that concern me. She didn't even have any idea that there's an exclusion that might apply. She says, he was not intoxicated or under the influence of any substances at the time of the accident, and in fact, he got distracted by me, his wife, paying attention to the dog in the back seat. He looked back for a matter of seconds, and the wreck was the next thing that happened. So what if you were to have to go back? There are a lot of these cases where we send everybody back for a do-over. There would be nothing prohibiting you from bringing forth your own expert and using Dr. Folkman's report and calling the collision report person to explain why they changed that and how they didn't actually know the amounts of drugs. I don't know if you can cross-examine in this type of hearing or not, or I guess you can't. That's what he's telling me over here. But that you could get affidavits that are in sight to the rules, that the collision report's speculative, and now that you have all of this. I suppose that's possible, Your Honor, but look at what that does. That tells every insurer out there that if you get something that nobody knows about that should be in the administrative record and you hold on to it and you deny and don't tell the claimant about that negative to line of evidence, and you do get caught, nothing happens any worse than if you would have delivered the report in the first place like you were supposed to do. So where's the incentive? I mean, incidentally, it's maybe sending a message, but we're trying to resolve this case. And in this case what it seems to me that you could do is require them to explain the expert opinion of the doctor, Farrakhan, whatever his name was. I mean, they didn't say anything about him. Is that correct? In the administrative report, they did not reference this expert. Not a word. Not a word about it. And none of their evidence at all indicated that they had expert opinion that connected the alcohol to the accident except for the report of the people on the scene that said they smelled alcohol. Is that correct? Well, I see I'm out of time, but may I answer your question? Go ahead. Yes. At the same time, having an opinion by their own experts saying that after reviewing all the things we've talked about, that a determination of impairment could not be made. And we have the Sheck-Snyder case that says with procedural unreasonableness, even if there is sufficient evidence in the record. And here we're talking about, well, maybe we'll go back and find out if there might be. You've answered the question. Thank you, Your Honor. Thank you, Mr. Murdoch. Ms. Jones. Thank you very much. Your Honors, may it please the Court, my name is Kristen Jones, and I represent the Appalooh Life Insurance Company of North America, or LINA for short. This Court should affirm the summary judgment below because there is more than a scintilla of evidence to support the Planned Administrator's finding that Mr. White's death resulted at least in part, either directly or indirectly, from his ingestion of unprescribed drugs. We have evidence in the record. What do you have to say, though, about failing to produce the report of this expert? Dr. Forka? Faulkner, yes, Your Honor. Excuse me? What do you have to say about that, failing to give that? So, LINA absolutely acknowledges that Dr. Faulkner's report was not referenced in either of the denial letters, and there's no evidence. You did not give it to him. That's correct. But what we do have is a letter from LINA in January telling the appellant that we had sent the file to a forensic toxicologist. That's at the record at page 202. How do you say you gave him a full and fair hearing if you did not give him that record? You're an expert. Correct. Because we cannot make a conclusion of what his status was at the time of the accident. That's correct, Your Honor. But we did in our – we're only required to give him in his denial, in the denial, the evidence that we relied on. And we listed out our explicit reasons and all of the evidence we had to support. There was no evidence of any kind that pinned his impairment to the time of the accident, at least as I understand it. Correct. There was not quantifiable evidence. And so then you're relying on that exclusion that he was impaired, I mean, that his impairment was the cause of the accident and, therefore, it was not covered. Well – You didn't have any evidence of that. Am I missing something? Yes, I disagree, Your Honor. We had evidence from the police report that cited them for DWI, and I disagree that the sole reason he was cited for – Cited for DWI? He was cited for DWI, Your Honor, and I disagree that the sole reason was because of the smell of intoxicants. We can look – we know that we can look to the circumstances of the crash, which is exactly what this investigating officer did. You may be in good shape if you had provided him with that report and if you had acknowledged in your report that there is evidence to the other side. I mean, and so it just seems to me that you loaded it. You say he was cited for DWI? He was cited for DWI. I thought he was killed in the accident. He was – Three days later. Yes, about a week later is when he actually died, but he was cited for DWI. But there's no actual evidence from his blood work that he was under the influence of alcohol. You cannot say that he was actually under the influence of alcohol when you compare his blood work. No, but under Arkansas law, it's not just an alcohol requirement. We have evidence in the record that he was under the influence of cocaine and marijuana at the time of the accident. Tell me that. Yes. Under the influence? That he had – I'm sorry if I stated that. That he had marijuana and cocaine in his system at the time of the accident. And then – Marijuana stays a long time in your system. We have lots of cases where people can – even if you, like, test your hair or whatever, it's like a month later or something. You cannot say that he was under the influence of marijuana at the time of this accident. Well, but here's what we do know is that these qualitative – this qualitative evidence was sufficient for both the police officer and the coroner report to make a determination of impairment and to make a determination of the underlying cause of death being amphetamine abuse and cocaine abuse. Right, but overall, he might have died from that after the trauma of the accident. But that doesn't mean that that caused the accident itself. The fact that he had such a depleted system, the trauma of the accident, of these years of abuse, took its toll, and this is very sad. But that's – that doesn't mean that that caused the accident. You said in your very first sentence that in part from unprescribed drugs that you – I don't see where it says that in the record because some of the drugs are drugs that were given perhaps at the time on the scene, and we don't know that he was actually under the influence of cocaine or marijuana or even amphetamines. How do we know? And did the – also, did the collision report, the person who prepared it, have access to the very learned doctor report that said you couldn't measure from the autopsy results in the blood test? Did they have that information? And if they were provided that, would they have put impaired on that? To answer your question directly, no, they did not have Dr. Falkman's report. But this evidence was sufficient for the police officer in the course of his duties as a government official to note impaired on the collision. If we – Was he a medical person or something? If we are making the determination or if they're asking us to say that Lina was unreasonable in relying on a police officer's report and a coroner's report with these findings, then we're basically saying that those findings themselves were unreasonable. And the key here is that we have no responsibility to investigate under Vega and Truitt to investigate the accuracy or sufficiency of the underlying evidence. That then becomes their burden. Once you have something that you commissioned yourself from an actual expert on the toxicology and the medicine and all of that, then you can't just blithely ignore it in favor of these unscientific determinations. Well, I will note, actually, the district court found that it was – this report was actually favorable to Lina and disfavorable to the appellant's case. And even though we're under a de novo review, this court may accept factual findings unless the findings were clearly erroneous. And as Judge Jolly stated earlier, the report does show that he – it confirmed that he did not have prescription medication, to your question earlier, Judge Elrod. The parties conceded that this was under abusive discretion, which is – It is absolutely under abusive discretion. And that's why the question is just whether there is a scintilla of evidence to support Lina's decision in this case. We have the toxicology report showing that – I don't agree with you on that necessarily. I mean, you can find a case that probably says scintilla of evidence, but that doesn't fully describe abusive discretion. Certainly. Or whether it was reasonable for Lina to rely on qualitative toxicology reports that showed he had these unprescribed cocaine and marijuana in his system. At the time of the accident. I mean, that's the crucial point. Absolutely he had it at the time of the accident. The blood draws were taken – the urine was taken about two hours after the accident, and the blood draw about four hours after the accident. We absolutely can show that he had those drugs in his system, and we also – I'm asking because it's my understanding, is that we don't know what amounts. All we know is that those substances appeared somewhere in his bloodstream in indefinite amounts. Is that correct? Certainly. We are not claiming and we've never claimed that these were quantifiable evidence, but under Arkansas law and under – for the finding of intoxication, we do not have to have quantifiable evidence or quantifiable results of drugs in the system. I would also like to note that we have two exclusions. Again, that's not quite the statement of the law, is it? Excuse me? You have to show impairment. Well – Under Arkansas law, at least as I read the briefs, you have to show that he was impaired at the time of his accident. For the – Saying that he's impaired does suggest some sort of quantifying the amount of drugs that were there. I disagree. That's not – there has to be some connection, certainly, but, again, we have a police officer who cited him for DWI. Was it reasonable for Lina to rely on that information? We purport that it was. We also have relied on two exclusions in this case. One was the intoxication and one was – Was it reasonable to rely on the DWI even after you knew that it was only perhaps one or two drinks and if at all? That would be – Well, I think we agree that we're not – Once you learn that's not true. I actually disagree that it was more information because Dr. Faulkman's report was actually just basically a resuscitation of the information that we already had. The medical records were just qualitative records, and that's what he relied on and that's what we relied on. You're right in this sense that you hadn't – he simply confirmed what you had, and that was nothing about the time of the accident. And he just – he articulated it. He says, I cannot say and cannot testify as an expert to the extent that any of these substances impaired his driving. But it was enough for a police officer to make a finding of impairment, and it was enough for the coroner to make the underlying cause of death cocaine abuse and amphetamine abuse. You've got a good – I mean, it's a close case, and I'm not disputing the arguments that you're making necessarily except to the fact that even though they smell alcohol on him, later there was no confirmation that alcohol was in his blood. So, I mean, that's – that kind of cuts against you. Well, so again, I would like to note that there were two exclusions found in this case, the second being simply the voluntary ingestion of any narcotic or drug unless prescribed or taken with prescribed dosage. And here we have evidence that he had cocaine – again, I know I'm repeating myself – cocaine and marijuana in his system at the time of the accident. So we actually – there was a lot of dispute about the intoxication, and under Arkansas law, I – and we certainly agree the district court found correctly in that. But we actually don't even have to get there. We can look strictly to the voluntary ingestion of a narcotic and the exclusion. I don't know that that's – I mean, unless it's explicit, does that mean anybody who has ever used narcotics is excluded from any coverage under this policy? No, Your Honor. We still have the causation element of the claim, which is just that whether it was directly or indirectly, in whole or in part, caused by or results from any of the following. And the question is just whether it was reasonable for Lina to make this determination with the record – with the evidence in the record, which is two toxicology reports, a police report, and the coroner's report stating that the underlying cause of death was amphetamine abuse and cocaine abuse. I know, but again, you've got – you're facing the procedural unfairness of failing to provide him with that report of Dr. Faulkner. Well, this court subscribes to a substantial compliance standard, and under these facts, it is, at least in my mind, no doubt that we substantially complied. Again, we told them that we had sent it to a forensic toxicologist for review. They then had two opportunities after the initial denial and the appeal denial to request copies of the records, and they never did that. They did. No, they – They didn't want Dr. Faulkner? They never made a request for – They absolutely did not make any requests for records after the initial denial or after the appeal denial. They made one request for all records, and then Dr. Faulkner's report was not in there, and they made no further – Well, so – Is that right? To touch on the timeline, yes, the one letter they can possibly cite to is a fairly ambiguous letter asking for all documents you may rely on. This was in January. This was before Lina had received Dr. Faulkner's report, and the determination didn't occur until two months later. How many toxicologist experts did you have in your file on Dr. Faulkner? Dr. Faulkner appears to be the only one we sent the file to. I would say it's relevant. In fact, you say that it supports you. Well, we only bring that up because with – in regards to the procedural unreasonableness is all of the cases, everything that is in the case law about procedural unreasonableness is when the evidence itself is contrary to the decision or could support an opposite finding. Quite frankly, he's not even arguing that Dr. Faulkner's letter itself is contrary to the determination. Counsel, can we talk about the case law for a minute? Absolutely. Okay. Let's talk about Schexnader first. Yes. Okay. And in Schexnader, we held although substantial evidence supported Hartford's decision, the method by which it made the decision was unreasonable, and the conflict because it is more important than the circumstances acts as a tiebreaker for us to conclude that Hartford abused its discretion. Yes, that's a correct statement. The key here and the distinction I made earlier is that in this case there was a failure to address contrary evidence, and it explicitly says it was in direct conflict with the decision that was made. Assuming arguendo that we read this letter as contrary, why wouldn't Schexnader control here? Schexnader. Excuse me. Yes, how do you pronounce that? I think that under this case that it certainly would, assuming that which I know of. Because you have a conflict just like you have in that case. Absolutely. But all it would do. Every other fact is the same. Right. All it would do would allow to have the court give more weight to the conflict of interest, which we don't even get to that question if the court rules that Lina's interpretation was legally correct. So assuming we've reached the abuse of discretion part of the interpretation of the terms, it would just allow for a justification of giving more weight to the conflict of interest. It doesn't decide. A conflict of interest? Because that all of a sudden kind of piqued a little interest in me. This is $1,200,000? A little less than that, I believe, yes. A little less than that. Over a million dollars that you've got to pay if you conclude that the accident, unless you conclude that the accident was because he was impaired. Now, that seems like to me a significant conflict of interest. And if it's a close case, we should let that be the thumb on the scale that says, whoa, we better send this thing back or we better reverse and render. Well, I disagree that there's no evidence in the record of a conflict of interest, even though they had an opportunity to. Well, there is, too. I mean, just on the face of it. Well, on the face, absolutely. I'm not disagreeing that Glenn doesn't say that there is a conflict of interest under these circumstances. But again, I remind the Court, it's not simply a determination of impairment. We have the second exclusion on the ingestion of drugs. And I also think that under the circumstances of the report itself being not contrary or in direct conflict with Lyna's determination. And again, the letter was just a resuscitation or a restatement of all of the evidence that the appellant had. My opposing counsel mentioned all of the stuff that he would have done had he had this report. He could have challenged the death certificate way early on. He could have challenged the police reports way early on. He could have done many of the things anyway. I certainly agree. But I don't know if that's relevant to if you determine that the report is contradictory and there is a conflict, then the Schexenator may apply even if he didn't pursue all of his available remedies earlier. I, again, will have to disagree because I feel like every... Well, is there a case that says that? Am I missing the law? No, but all of the cases that discuss the procedural and reasonableness, again, only discuss whether it was in direct conflict with the evidence, and that's not the case here. How do you distinguish the Napoli case? In Napoli, the appellant was only, or the defendant was also, was never given a reason for his termination whatsoever. And here, so this concerned the full and fair review, and this is very distinguishable from our case because not only did we tell her the reasons we were denying the review or denying the benefits in our initial denial... Why didn't you at least cite the one toxicology expert you had in your report? Why didn't you cite even one? I don't, there's nothing in the record to explain except we need not cite to anything that we're not relying on. Isn't that weird? It's almost like you are hiding it. But how could we be hiding it if we told her we sent it to a toxicologist? She had two opportunities to ask for the record, and she had an opportunity to... Did she have a lawyer at this point? She had a lawyer throughout the entire process. Yes, Your Honor. Okay. If there are no more questions, we ask that you affirm the underlying judgment. Thank you. At the time that the request was made for all documents relative, and the word of prior counsel for my client was relative to the case at hand. It didn't say the ones you relied upon. It asks for everything almost mirror image to what the regulatory provisions define relevant as meaning. The request was adequate. Now, Arkansas law, what does Leina have to prove? Well, Leina has to prove that there's substantial evidence in the record to support its decision. It's got to prove that there's substantial concrete evidence to support its position, if you look at the various Fifth Circuit cases and those of other circuits in the country as well. Well, what does it have to have concrete and substantial evidence of under the Arkansas statute that there was impairment, quote, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered, and the driver, therefore, constitutes clear and substantial danger of physical injury to herself or another person? Well, if that's the hurdle they need to cross by substantial evidence, concrete evidence, and their expert testifies that the very toxicology results that the cop uses to throw a word on a page, that the coroner uses to throw a word on a government form, and by the way, this was excluded, but we have appealed the issue, that the coroner testifies by affidavit, once presented with Dr. Faulkman's report, that, hey, all I do, my practice as coroner, is to note those things of record if they exist, because he'd probably feel like he looks like an idiot if he didn't at least note it, but he says, my putting those words on that report have nothing to do with me believing that this man was intoxicated at the time of the accident, and in fact, my words on the report in this case, for them to be construed as meaning that is simply fiction. This is a disinterested coroner, and it's a perfect example of why that affidavit wasn't submitted into the administrative record before it was too late, according to the district court. I believe it falls into the exception anyway. Now, Schecht-Snyder, it was not just a case that talked about procedural unreasonableness goes into a conflict of interest analysis and how much weight to give the conflict and whether to consider it a tiebreaker. It does all that, but it also says that the unreasonableness, procedural unreasonableness, in and of itself, is reason to reverse a denial of benefits. And in fact, it did reverse the denial of benefits. It did not render it reversed and rendered. It did not remand it back to the insurer to now say, well, we get another shot at everything, even though, in the court's opinion, we botched this process. And Schecht-Snyder said that even though they're expressly saying, even though there's sufficient evidence in the record or substantial evidence in the record to support the denial, we reverse for this very reason. And in that case, we're talking about a Social Security disability award to the plaintiff, okay, made by another agency, obviously known by the plaintiff at the time the arguments are made. But the fact that the administrator didn't at least address it in its denial was reason in and of itself to say that was procedurally unreasonable to at least deny it because it was in plaintiff's favor? Is it the coup de grace that says Social Security says this, we must follow? Obviously not. The law says that such a ruling has to at least be considered by a defendant, insurance company, because obviously it's to some degree favorable to a plaintiff. Well, here we have Leina's own expert, not some independent administrative agency, its own expert, and not plaintiff's expert, its own, saying the toxicology results are inadequate, which I don't see how that can be interpreted as anything less than more egregious than what was reversed and rendered in Schechsneider. Okay. There you are. Thank you, Your Honor. Thank you, sir. Thank you, Your Honors. Okay. These cases are submitted. The court will recess until 9 o'clock tomorrow morning.